IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVERIO PHARMA GMBH, BAYER AG, and BAYER HEALTHCARE PHARMACEUTICALS INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Redacted: Public Version |
| v. | ) ) | C.A. No. 18-073-LPS |
| ALEMBIC PHARMACEUTICALS LIMITED, *et al.*, | ) ) ) ) | **CONSOLIDATED** |
| Defendants. | ) | |

**LETTER TO THE HONORABLE LEONARD P. STARK FROM KAREN E. KELLER IN RESPONSE TO BAYER'S MOTION TO EXCLUDE EVIDENCE FROM DRS. ROTELLA AND SCHEIDT**

The Honorable Leonard P. Stark
October 30, 2020

Dear Chief Judge Stark:

Bayer's motion to strike portions of the opinions offered by MSN's experts Dr. David Rotella and Dr. Karl Scheidt should be denied. As discussed below, these opinions were properly offered under the Federal Rules; even if they had not been, the *Pennypack* factors[1] weigh against the extreme sanction of exclusion (most notably, the absence of any prejudice to Bayer). *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *4 (D. Del. Dec. 11, 2017) ("Although a court clearly has the authority to strike an expert report and/or exclude evidence (such as expert testimony) pursuant to Rule 37, it should be mindful that . . . the exclusion of critical evidence is an extreme sanction . . . ." (internal quotation omitted)).

**MSN's Pleadings Support the Opinions in Dr. Scheidt's Supplemental Expert Report**

The opinions set forth in ¶¶ 25, 26, and 31–51 of Dr. Scheidt's Supplemental Report are fully supported by MSN's First Amended Answer and Counterclaims, D.I. 115, the operative pleading here. On September 11, 2019, the Court granted MSN leave to amend its pleadings to include inequitable conduct. Ex. A at 21:5–23:17. These allegations are primarily focused on the inventors' non-disclosure of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ D.I. 115 ¶¶ 25–90. MSN's pleadings also allege that these actions were part of a "larger pattern of deceptive conduct" evidenced by the inventors' concurrent failure to disclose at least 10 additional prior art references that they authored. *Id.* ¶¶ 82–83. Bayer complains that the word "material" was not used to describe these references, but ignores the meaning of that term—that the references (1) contain non-cumulative disclosures that, (2) alone or in combination with other prior art, would render a claim unpatentable. *See Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017). Both elements appear explicitly in MSN's pleadings—which Bayer's brief conspicuously fails to mention. Specifically, MSN pled:

> The failure of the Accused inventors to disclose ▇▇▇▇▇▇▇ to the USPTO during the prosecution of the '037 patent is also consistent with a larger pattern of deceptive conduct. The Accused Inventors also failed to disclose during prosecution *several highly relevant, non-cumulative prior art publications from Bayer itself*, such ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Feurer 2001b, Straub 2001, Straub 2001a, Straub 2001b, Stasch 2002a, Stasch 2002b, and Straub 2002. These publications disclose important information (e.g., conclusions regarding structure-activity relationships and in-depth profiles of the biological activity and metabolism of lead compounds BAY 41-2272 and BAY 41-8543) which is not found in the other references and patent applications submitted during prosecution of the '037 patent. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] The *Pennypack* factors generally are: (1) prejudice or surprise to the moving party, (2) ability of the moving party to cure any prejudice, (3) disruption to trial, and (4) bad faith or willfulness. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). Bayer's brief does not address the last two of these factors, both of which resolve in MSN's favor.

1

The Honorable Leonard P. Stark
October 30, 2020

*Id.* ¶ 82 (emphasis added). Paragraph 21 of MSN's pleadings further alleges that "the Asserted Claims of the '037 patent are invalid under 35 U.S.C. § 102 and/or § 103" in view of these 10 withheld references and other prior art. *Id.* Thus, contrary to Bayer's claims, MSN has adequately pled both elements needed to establish that the non-disclosure of these references was material.

The opinions offered in Dr. Scheidt's Supplemental Report are entirely consistent with MSN's pleadings. For each of the 10 secondary references, Dr. Scheidt explains the key teachings of the reference, why these teachings are non-cumulative of the art disclosed to the examiner, and how these teachings render the asserted claims unpatentable. Ex. B ¶¶ 31–51. Additionally, Dr. Scheidt makes extensive citations to the invalidity opinions in his Opening and Reply Expert Reports, which Bayer has had in its possession for over a year. *Id.* Dr. Scheidt's subsequent conclusion that each reference is material to patentability is merely a summation of these previously-pled elements rather than a "new inequitable conduct defense" as Bayer claims. There is nothing "new" here with respect to the elements of materiality set forth in MSN's pleadings that would cause Bayer any meaningful prejudice or surprise.[2,3] Regardless, Bayer had ample opportunity to cure any purported prejudice at his recent deposition, where it questioned Dr. Scheidt at length about this Report and the materiality opinions therein. *See, e.g.*, Ex. C at 48:11–50:22, 60:2–61:24, 192:14–216:2.

The remainder of Bayer's argument alleges that Dr. Scheidt's opinions represent "a backdoor effort at a new inequitable conduct defense without meeting the pleading or disclosure requirements." This is entirely incorrect. MSN has never argued (and will not argue at trial) that the 10 secondary references discussed above constitute wholly independent grounds of inequitable conduct as compared to ▇▇▇▇▇▇. MSN's amended pleadings make clear that these references are evidence of the inventors' intent to deceive. D.I. 115 ¶¶ 63–64, 71, 77, 82–83. Specifically, these highly relevant, non-cumulative references are printed publications even under the inventors' strained definition, and their concurrent non-disclosure represents a "larger pattern of deceptive conduct." *Id.* ¶ 82. Further, MSN's pleadings explain that a key component of this analysis is the secondary references' non-cumulativeness and extreme relevance to the claimed invention, as demonstrated by, *e.g.*, their disclosure of key scientific data, their subsequent citation by the inventors in retrospective articles, and the fact that they would render the claims invalid. *Id.* ¶¶ 21, 82–83. Dr. Scheidt's opinions regarding materiality simply combine the elements in MSN's pleadings to demonstrate the extreme relevance of the secondary references to the asserted claims and therefore do not portend any change in MSN's inequitable conduct position.

Bayer is also incorrect that MSN has failed to meet the pleading requirements for inequitable conduct with respect to the secondary references. As discussed in detail above, MSN's pleadings unquestionably allege that: (1) these references are non-cumulative prior art that renders the asserted claims unpatentable; (2) four inventors of the '037 patent failed to disclose these references to the USPTO; and (3) the inventors' non-disclosure of these reference was intentional and was part of a larger pattern of deceptive conduct. *Id.* ¶¶ 21, 63–64, 71, 77, 82–83. This is

---

[2] MSN informed Bayer of its intent to serve a supplemental expert report on materiality and cumulativeness when the parties met and conferred in person over 11 months ago. Ex. D.

[3] To the extent the Court decides to strike portions of Dr. Scheidt's opinions, that sanction should be limited to his conclusions of materiality for each reference and not disturb his preceding analyses of invalidity and cumulativeness, which find undisputed support in MSN's pleadings.

The Honorable Leonard P. Stark
October 30, 2020

more than sufficient to meet the pleading requirements set forth in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327–29 (Fed. Cir. 2009). Indeed, this Court found that although the parties' arguments primarily involve ▮▮▮▮▮▮▮▮▮▮▮, "[t]he amended complaint identifies . . . with adequate specificity the who, the what, the where, the when and the how of ***allegedly material omissions***, that is the failure to disclose to the PTO ultimately ▮▮▮▮▮▮ and then some ***other secondary references***. . . ." Ex. A at 21:22–22:1 (emphasis added). The cases cited in Bayer's brief are similarly unhelpful to its position and are readily distinguishable from the facts at issue here. *See, e.g.*, *Exergen*, 575 F.3d at 1329–30 (pleading failed to name specific individuals or identify which claims were relevant to the withheld references); *Telebrands Corp. v. 1byOne Prods., Inc.*, 2018 WL 3696558, at *2–3 (D. Del. Aug. 3, 2018) (pleading failed to name specific individuals or "identify a single allegedly withheld prior art reference with specificity"); *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175, at *8–9 (D. Del. Apr. 10, 2017) (pleading failed to name specific individuals or provide "specific facts" to support a reasonable inference of intent to deceive); *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 2014 WL 2622240, at *1–2 (D. Del. June 11, 2014) (pleading failed to name specific individuals and contained "no facts" to support reasonable inference that documents were withheld).

Finally, MSN disagrees that Bayer should be allowed a further supplemental expert report from Dr. MacMillan in the event its motion is denied. Bayer agreed to a simultaneous exchange of supplemental reports with full knowledge that MSN would offer expert opinions on materiality and cumulativeness, and simply has no excuse for failing to address either of these issues in its own supplemental reports. Ex. D. Moreover, Dr. MacMillan has already offered rebuttal to Dr. Scheidt's materiality opinions in his Opening Report, which contains extensive opinions as to why the same references cited by Dr. Scheidt do not render the claims invalid. To the extent Dr. MacMillan intends to offer wholly new opinions in a further supplemental report, this would be highly prejudicial to MSN because there is no longer sufficient time in the schedule to afford MSN a reasonable opportunity to depose Dr. MacMillan on any such opinions prior to trial.

Bayer has provided no reasonable basis or authority to strike Dr. Scheidt's materiality opinions under *Pennypack*, and its motion should be denied. *See, e.g.*, *Novartis Pharm. Corp. v. Actavis, Inc.*, 2013 WL 7045056, at *9–12 (D. Del. Dec. 23, 2013) ("[N]early all of the *Pennypack* factors militate against granting the 'extreme sanction' called for by the Motion to Strike.").

**The Re-Direct Testimony Offered by Drs. Rotella and Scheidt Was Proper**

There was nothing improper about the re-direct testimony offered by Drs. Rotella and Scheidt during their respective depositions.[4] In each instance cited by Bayer, the disputed testimony was offered in direct response to lines of questioning by Bayer's counsel that opened the door to the subject under discussion. In any event, this disputed testimony related directly to and/or reasonably elaborated on ground already covered in the experts' respective reports.

---

[4] Bayer suggests without evidence that the disputed testimony was "pre-rehearsed" and violated the parties' agreement not to speak to witnesses during the deposition. This is false. MSN had no off-the-record contact with either expert at any time during their deposition and did not "rehearse" any re-direct testimony. Notably, Bayer raised no objections to this effect during the depositions and did not bother to ask Dr. Rotella or Dr. Scheidt if they spoke to counsel prior to re-direct.

3

The Honorable Leonard P. Stark
October 30, 2020

It is well settled that experts are permitted offer re-direct testimony responsive to questioning from opposing counsel, and to the extent that questioning relates to subject matter outside an expert's report(s), this opens the door to re-direct testimony on that material. *See Cephalon, Inc. v. Watson Pharm., Inc.*, 769 F. Supp. 2d 761, 772 n.13 (D. Del. 2011) (denying motion to strike deposition testimony not covered in the expert report because "Watson opened the door to this opinion during Bates's deposition, at which point Bates thoroughly discussed his infringement opinion"). Further, there is no requirement that an expert witness include every detail surrounding his or her opinions in an expert report. Experts are permitted to reasonably elaborate on the opinions set forth in their reports when testifying. *Sunovion Pharm. Inc. v. Dey Pharma, L.P.*, 2012 WL 6858144, at *2 (D. Del. Jan. 27, 2012) ("[T]he scope of an expert's testimony is not strictly limited to the precise words contained in the expert report, but may further include a reasonable degree of 'elaboration' and/or 'synthesis' of the original contents of that report."); *see also Dow Chem. Co. v. Nova Chems. Corp.*, 2010 WL 2044931, at *2 (D. Del. May 20, 2010) (denying motion to strike expert declarations submitted with summary judgment brief because "the subject declarations only elaborate . . . by providing greater detail"). As discussed below, the disputed re-direct testimony of Drs. Rotella and Scheidt was offered consistent with this precedent.

The first portion of Dr. Rotella's disputed testimony involves opinions he offered in a prior litigation regarding the public accessibility of a presentation given at the Gordon Research Conference on Medicinal Chemistry. Ex. E at 267:19–270:6. This testimony does not contain "new opinions," but is instead a discussion of Dr. Rotella's prior experience and how it relates to the instant case, subject matter to which Bayer opened the door when it inquired as to Dr. Rotella's qualifications and whether he had ever offered opinions on the public accessibility of a prior art reference. *Id.* at 38:12–43:17, 267:19–270:6. Moreover, Dr. Rotella's Opening Expert Report expressly disclosed his involvement in the prior case, *Gilead Sciences Inc. v. Abbvie Inc.*, No. 1:13-cv-2034 (D. Del.). Ex. F ¶ 98. If it so desired, Bayer could have easily located documents reflecting his opinions on that case's public docket, eliminating any purported surprise.

Bayer's objection to Dr. Rotella's testimony regarding his prior experience with patents and information disclosure issues while working in the pharmaceutical industry, Ex. E at 265:7–266:3, 270:17–271:20, is similarly deficient. Bayer opened the door to this testimony when it questioned Dr. Rotella extensively about his time in industry, his understanding about why a pharmaceutical company would have procedures in place to protect intellectual property from public disclosure, and even his interpretation . *Id.* at 17:15–32:3, 68:20–73:15. As above, the testimony at issue here relates to Dr. Rotella's experience rather than new opinions, and, in any event, Dr. Rotella's three Expert Reports detail his extensive experience in this regard, especially as it relates to intellectual property concerns and typical industry practices regarding the disclosure of confidential information. *See, e.g.*, Ex. F ¶¶ 7–10, 17, 55, 72–75; Ex. G ¶¶ 6–7, 39, 50–52; Ex. H ¶¶ 19–22, 25, 28, 31–33.

Bayer's final complaint with Dr. Rotella's re-direct testimony relates to his statement that
 Ex. E at 275:8–276:21. Not only was this testimony offered in response to Bayer's questioning, but it also finds ample support in Dr. Rotella's Expert Reports, where he discusses how common industry practice regarding ACS National Meetings and the approval of external publications (generally, ) created an expectation that any subject matter presented on an

4

The Honorable Leonard P. Stark
October 30, 2020

▪▪▪ was a public disclosure that could be copied by competitors and/or endanger intellectual property rights. *Id.* at 69:20–71:8; Ex. F ¶¶ 55, 72–75; Ex. G ¶ 39; Ex. H ¶¶ 16–25, 28, 30–35.

Bayer offers two objections to Dr. Scheidt's re-direct testimony, both of which involve his comparison of biological data between ▪▪▪. Ex. I, J.[5] *First*, Bayer objects to Dr. Scheidt's conclusion that data from ▪▪▪ can be compared between ▪▪▪ because they contain an internal standard.[6] Ex. C at 333:5–335:3. This testimony was offered in response to extensive questioning by Bayer regarding a POSA's ability to interpret data from this same assay as reported in several of Bayer's patents. *Id.* at 134:8–137:6, 225:3–226:25; 229:7–232:8, 235:23–238:9. Dr. Scheidt responded that, as this assay is highly variable, the data needs to be normalized to a standard compound (*e.g.*, "YC-1") before any comparisons can be drawn. *Id.* Thus, Dr. Scheidt simply walked through a door Bayer opened when he cited the internal standard as a prerequisite for comparing the data reported in ▪▪▪. *Second*, Bayer objects to Dr. Scheidt being asked to compare this data in the first place. *Id.* at 336:8–337:16, 338:9–339:16. This portion of Dr. Scheidt's testimony was elicited in response to Bayer's questioning about the conclusions a POSA might draw from data reported in ▪▪▪, and whether positive results could create an expectation of *in vivo* activity and/or an interest in further development. *Id.* at 86:25–89:23, 95:21–98:21, 107:9–111:11, 115:13–125:6. These questions focused on ▪▪▪ *Id.* Bayer therefore opened the door to re-direct testimony that compared the ▪▪▪—and assessed the conclusions a POSA might draw regarding *in vivo* activity. *Id.* Dr. Scheidt's testimony is also supported by his Opening and Reply Expert Reports, which discuss ▪▪▪ Ex. K ¶¶ 66, 117, 151, 175, 181, 184, 198–221, 225, 229, 232; Ex. L ¶¶ 110, 113–14.

MSN's re-direct questioning of Drs. Rotella and Scheidt was proper under the Federal Rules. There was also no "prejudice" or "surprise" to Bayer because in every instance, the disputed testimony was responsive to prior questioning by Bayer and/or finds support in the experts' respective reports. Bayer is also wrong that it "had no meaningful opportunity to challenge" the testimony to which it now objects—Bayer could have cured any purported prejudice through re-cross examination at the depositions but chose not to do so in all but one instance. Of the cases Bayer cites on this issue, only two involve objections to deposition testimony and neither resembles the facts at bar. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (expert's entire deposition testimony stricken because his cursory report gave defendant "little or no understanding as to what he would testify"); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 289 F. Supp. 2d 493, 500 (D. Del. 2003) (expert offered testimony on doctrine of equivalents after being questioned on literal infringement). Bayer's motion to strike the re-direct testimony of Drs. Rotella and Scheidt should be denied because it fails to point to any facts or authority that would justify the extreme sanction it seeks. *Novartis*, 2013 WL 7045056, at *9–12.

---

[5] ▪▪▪

[6] Curiously, Bayer did not move to strike its own re-cross examination on this topic, during which Dr. Scheidt restated and further elaborated on his conclusion. Ex. C at 342:16–345:8.

5

The Honorable Leonard P. Stark
October 30, 2020

                                        Respectfully submitted,

                                        */s/ Karen E. Keller*

                                        Karen E. Keller (No. 4489)


cc:    All counsel of record (by CM/ECF & e-mail)
        Clerk of Court (by CM/ECF)

# Exhibit A

```
          IN THE UNITED STATES DISTRICT COURT

          IN AND FOR THE DISTRICT OF DELAWARE

                       - - -
ADVERIO PHARMA GmbH, BAYER AG and
BAYER HEALTHCARE PHARMACEUTICALS INC, :   CIVIL ACTION
                                      :
          Plaintiffs,                 :
v                                     :
                                      :
ALEMBIC PHARMACEUTICALS LIMITED,      :   Consolidated
ALEMBIC GLOBAL HOLDING SA, ALEMBIC    :
PHARMACEUTICALS, INC., and INC.       :
RESEARCH, LLC,                        :
                                      :   NO. 18-073-LPS
          Defendants.
                       - - -

                Wilmington, Delaware
             Wednesday, September 11, 2019
                  Telephone Conference

                       - - -

BEFORE:    HONORABLE LEONARD P. STARK, Chief Judge

APPEARANCES:                  - - -


          MORRIS NICHOLS ARSHT & TUNNELL, LLP
          BY:  JACK B. BLUMENFELD, ESQ.

               and

          BARTLIT BECK, LLP
          BY:  ADAM K. MORTARA, ESQ., and
               NEVIN M. GEWERTZ, ESQ.
               (Chicago, Illinois)

               and

          BARTLIT BECK, LLP
          BY:  MEG E. FASULO, ESQ.
               (Denver, Colorado)

                    Counsel for Plaintiffs

                              Brian P. Gaffigan
                              Official Court Reporter
```

1    understand these posters were prior art is something

2    reasonable and it would be unreasonable to think that they

3    in fact would have inferred the change in the U.S. patent

4    law at the time.

5                 THE COURT:  All right.  Thank you.

6                 So on the issue of MSN's request for leave to

7    file an amended complaint to add inequitable conduct, I have

8    decided to grant that motion.

9                 The motion is governed by Rule 15.  Under Rule

10   15, as we all understand, leave is freely granted.  In the

11   absence of limited exceptions, the one that is pertinent

12   here seems to be futility in the sense of the plaintiffs'

13   arguments really all come down to the suggestion that

14   the defendants have not adequately pled the elements of

15   inequitable conduct.

16                I have not met the *Iqbal/Twombly* standards for

17   inequitable conduct; and taking the well pled factual

18   allegations as true, and drawing all reasonable inferences

19   in MSN's favor, I just disagree with the plaintiff.  I think

20   that they have stated a plausible case of inequitable

21   conduct.

22                The amended complaint identifies I think with

23   adequate specificity the who, the what, the where, the when

24   and the how of allegedly material omissions, that is, the

25   failure to disclose to the PTO ultimately the ACS poster and

1  then some other secondary references, but the arguments
2  really have been focused on the ACS poster.  I don't view
3  there really as being a dispute about the materiality of
4  the ACS poster, it is at least plausibly alleged that it
5  discloses in a participatory manner a compound that would be
6  anticipating and also part of an obviousness defense.
7        The materiality argument, as I understand it is,
8  hey, this is not prior art, and the inventors couldn't have
9  thought it was the prior art, or at least that's not the
10 single most reasonable inference that the inventors thought
11 it was prior art and then intentionally decided not to
12 disclose it to the PTO.
13       I really do think a lot of that is getting way
14 ahead of where we really are in this case.  The *Klopfenstein*
15 test will be applied.  I'm not deciding today the multifactor
16 factual test of *Klopfenstein*, but I am deciding today that
17 it's reasonable to believe that the *Klopfenstein* test for
18 prior art will be met.  And,
19       It is reasonable and plausible, again, applying
20 all the reasonable inferences in MSN's favor, to believe
21 that the inventors did in fact understand the materiality
22 and the public nature of what they disclosed in the poster,
23 and that with the biases that they may be found to have had,
24 that they made a conscious and deliberate and intentional
25 decision not to disclose this information, it seems

```
 1    initially to the Bayer Patent Office but ultimately and
 2    importantly not to disclose it to the PTO.
 3              My point is that all of that strikes me as
 4    something that is plausible that MSN may ultimately be able
 5    to prove consistent with the allegations that I have to take
 6    as true today.
 7              I further find it is plausible to believe
 8    that the fact finder, which in this case will be me, will
 9    ultimately be persuaded that an intent to deceive is the
10    single most reasonable inference that explains why this
11    poster in particular was not disclosed.  And,
12              My finding applies to all four of the accused
13    inventors.  If I take as true the plausible well pled factual
14    allegations of the proposed complaint and draw all reasonable
15    inferences in MSN's favor, notwithstanding Bayer's denials,
16    there is a sufficient basis for a plausible claim of
17    inequitable conduct against each of those four individuals.
18              In terms of -- and I will permit some additional
19    discovery, but I don't have more to say about that right
20    now.  We're going to talk about the discovery dispute, and
21    we'll see where that gets us.  But before we move on to
22    that, are there any questions about the fact that I have
23    granted the motion for leave to amend, Mr. Reddy?
24              MR. GEWERTZ:  No, Your Honor.
25              THE COURT:  And Mr. Gewertz?
```

# Exhibit B to EXHIBIT L

# Redacted In Their Entirety

**CERTIFICATE OF SERVICE**

I, Nathan R. Hoeschen, hereby certify that on October 30, 2020, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Jeremy A. Tigan
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

Meg E. Fasulo
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
meg.fasulo@bartlit-beck.com

J. Scott McBride
Nevin M. Gewertz
Rebecca T. Horwitz
Dawson Robinson
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
scott.mcbride@bartlit-beck.com
nevin.gewertz@bartlit-beck.com
rebecca.horwitz@bartlitbeck.com
dawson.robinson@bartlitbeck.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants MSN*
*Laboratories Private Limited and MSN*
*Pharmaceuticals, Inc.*