```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                  IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4    ADVERIO PHARMA GmbH, BAYER AG, and
      BAYER HEALTHCARE PHARMACEUTICALS INC,:    CIVIL ACTION
 5                                         :
                   Plaintiffs,             :
 6    v                                    :    Consolidated
                                           :
 7    MSN LABORATORIES PRIVATE LIMITED,    :
      et al.,                              :    NO. 18-073-LPS
 8                                         :
                   Defendants.
 9                              - - -

10                       Wilmington, Delaware
                      Wednesday, November 25, 2020
11                       Telephone Conference

12                              - - -

13    BEFORE:       HONORABLE LEONARD P. STARK, Chief Judge

14    APPEARANCES:            - - -

15              MORRIS NICHOLS ARSHT & TUNNELL, LLP
                BY:  JACK B. BLUMENFELD, ESQ., and
16                   JEREMY A. TIGAN, ESQ.

17                   and

18              BARTLIT BECK, LLP
                BY:  J. SCOTT McBRIDE, ESQ., and
19                   DAWSON ROBINSON, ESQ.
                     (Chicago, Illinois)
20
                     and
21
                BARTLIT BECK, LLP
22              BY:  MEG E. FASULO, ESQ.
                     (Denver, Colorado)
23
                              Counsel for Adverio Pharma GmbH, Bayer AG,
24                            and Bayer Healthcare Pharmaceuticals, Inc.

25                                 Brian P. Gaffigan
                                   Official Court Reporter
```

1    APPEARANCES:  (Continued)

2
                 SHAW & KELLER, LLP
3                BY:  NATHAN R. HOESCHEN, ESQ.

4                     and

5                GOODWIN PROCTER, LLP
                 BY:  ELAINE H. BLAIS, ESQ.,
6                     SRIKANTH K. REDDY, ESQ., and
                      KATHLEEN McGUINNESS, ESQ., and
7                     ERIC T. ROMEO, ESQ., ESQ.
                      (Boston Massachusetts)
8
                           Counsel for MSN Laboratories Private
9                          Limited, and MSN Pharmaceuticals, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22                            - oOo -

23                    P R O C E E D I N G S

24             (REPORTER'S NOTE:  The following telephone

25    conference was held remotely, beginning at 11:02 a.m.)

1          THE COURT:  Good morning, everybody.  This is

2    Judge Stark.  Who is there for the plaintiffs, please?

3          MR. BLUMENFELD:  Good morning, Your Honor.  It's

4    Jack Blumenfeld from Morris Nichols for the plaintiffs; and

5    also on are Jeremy Tigan from Morris Nichols, and from the

6    Bartlit Beck firm, Scott McBride, Meg Fasulo, and Dawson

7    Robinson.

8          MR. McBRIDE:  Good morning, Your Honor.

9          THE COURT:  Good morning to all of you.

10          And who is there for the defendant, please?

11          MR. HOESCHEN:  Good morning, Your Honor.  It's

12    Nathan Hoeschen here from Shaw Keller for MSN.  And with me

13    on the line from Goodwin Procter are Elaine Blais, Srikanth

14    Reddy, and Kathleen McGuinness.

15          THE COURT:  Okay.  Good morning to all of you as

16    well.

17          Of course, my court reporter is on the line.

18    And for the record, it is our case of Adversario Pharma,

19    GmbH, et al. versus MSN Laboratories Private Limited, et

20    al., Civil Action No. 18-73-LPS.

21          And as you know, I set this call after reviewing

22    your letters related to what trial is going to look like and

23    some of the complications that have arisen.

24          I have reviewed your joint status report from

25    earlier this week, and I thought it would be best to have a

1    conversation and try and figure out what this trial is going

2    to look like, assuming it is going forward and how best to

3    proceed in these circumstances that I know are difficult for

4    all of us.

5              So, of course, you both will have a chance to

6    speak and I'll have some questions for you, but let me start

7    with the plaintiffs, and I think if you could focus as best

8    you can because it's really not clear to me what it is you

9    want to see happen in light of the situation you say your

10   witnesses find themselves in.

11             And I won't just say I do not believe I did not

12   intend to reject bifurcation so you can feel free to argue

13   for that, but I do have the concerns about bifurcation and

14   other approaches that the defendants have raised.  So I

15   really need to understand what it is you think I should do

16   and why.

17             So go ahead, plaintiffs first.

18             MR. McBRIDE:  Your Honor, this is Scott McBride

19   from Bartlit Beck on behalf of plaintiffs.

20             Our proposal for bifurcation was simply to have

21   the trial in December specifically on the issue of whether

22   or not the ASC poster 205 that is the subject of the

23   inequitable conduct defense, whether that is prior art on

24   that issue alone, which we believe would be dispositive and

25   if you rule in our favor would end the case.  That it is not

1    prior art.

2            And the way that would look, Your Honor, is that

3    it would be limited to expert testimony, that is, experts

4    offered opinions relating to that, and it would not require

5    the accused inventor to provide any testimony which would

6    obviate the issue of the accused inventors not being able to

7    testify live and the prejudice to us that we believe that

8    creates.

9            There is, it would involve one otherwise live

10   witness testifying by deposition, but he is not an accused

11   inventor, Alexander Straub, and that is something we could

12   live with in this situation to avoid the prejudice of having

13   the inventors not able to testify live given the current

14   situation.

15           And it would significantly shorten and narrow

16   the issues so things could be done quickly.  And I believe

17   that could be resolved quickly by Your Honor.

18           And then if necessary, we wouldn't believe it

19   would be necessary, we then could have a separate trial when

20   things have improved and witnesses can testify live on the

21   issue of intent which would, this is the next issue to be

22   resolved.

23           THE COURT:  All right.  So let's just play that

24   out.  Let's assume for the sake of argument all that and I

25   quickly ruled that you lose on the bifur -- on the first

1      issue.   Now it's presumably some time in 2021 and we still

2      have a live dispute.

3              I'm unclear that the situation for your live

4      witnesses on intent is going to be any better than it is

5      today and the 30-month stay is going to expire in April.  So

6      what happens at that point?

7              MR. McBRIDE:  Your Honor, you are absolutely

8      right.  I won't pretend to be a fortune teller on every

9      aspect on what I thought was going to happen.  So there is

10     no guarantee.  I mean the one thing I can say is that buying

11     time for things to get better is an option that, you know,

12     it may get better, it may not get better.  Honestly, you're

13     right.  It may be when the time comes, if we were in that

14     situation and we needed to provide the testimony from the

15     inventors, we would be able to do so.  I accept that

16     possibility.

17             But what I know is that right now what the

18     situation is, and I know if things get better and it changes

19     for the better, then we can provide live testimony that

20     would be significantly more appropriate in our -- from our

21     perspective.

22             As for the 30-month stay, I understand that

23     that creates an issue, Your Honor.  It's certainly

24     extraordinary times.  Issues were -- and I suppose if there

25     were.  They don't have tentative approval at this point.  I

1    don't know -- we received no supplementary information from

2    them on their end -- the FDA.  We don't know where things

3    stand.  For example, there has been some kind of complete

4    response letter or anything like that, but publicly

5    available information shows that there is no tentative

6    approval.

7              So as things stands right now, there doesn't

8    appear to be an issue with respect to launch at risk.  And

9    again I guess what I would say is that is a bridge we cross

10   when we get there, if we need to get there.

11             THE COURT:  All right.  I think you said -- but

12   you're occasionally cutting out.  I think I have gotten most

13   of what you said, but under my scenario, let's just say we

14   bifurcate, you lose on the first step.  Now we need, you

15   know, to decide the second step.  It's early 2021.

16             Did you say you recognize the possibility that

17   at that point, if things have not improved and your live

18   witnesses can't testify live, then at that point we would

19   just have to go forward and you presumably use deposition

20   testimony?  Is that with what you're -- are you agreeable to

21   that approach?

22             MR. McBRIDE:  I wouldn't.  I don't think I would

23   concede necessarily agree to that approach, Your Honor.  I'd

24   say we have to take the world as we find it at that time.  I

25   mean if it looks like we can continue to delay in the hopes

1    that things will get better, I would say we probably would

2    ask we do that at that time.  If we're in a situation where

3    things are simply dire, worse than they are now, trending

4    downward, you know, we might take a different approach and

5    say look, it's time, it's time to fish or cut bait, play the

6    depositions and consider them unavailable.

7            But I don't -- again, because I don't know what

8    the world will look like in two months or three months, I'm

9    hesitant to make definitive statements about what we would

10   agree to do at that time.

11           THE COURT:  All right.  And then in terms of

12   whether you could make the showing today or maybe you're

13   presuming to make showing next week before the pretrial

14   conference, I was unclear on it, what is your position

15   about the unavailability of these witnesses today or in

16   the next few days, whenever you are going to I guess tell us

17   something more?

18           MR. McBRIDE:  As the situation exists right now,

19   they cannot testify live.  So we would, in that situation,

20   agree they are unavailable for live testimony because of the

21   designation of all of these, basically all of Europe as a

22   high risk area for COVID and travel and quarantine

23   restrictions associated with that.

24           So that's the situation that exists right now.

25   We check it daily or every other day, and MSN has asked us

1    to provide them with a definitive answer by December 2nd.

2              That was -- we said to them can you tell us what

3    date certain?  We understand at some point you want to know

4    for sure.  And our position -- set for December 2nd, and

5    we will tell them no later than December 2nd whether the

6    existing health and safety conditions will allow for them to

7    testify live.

8              THE COURT:  All right.  And then Bayer also says

9    that -- I'm sorry, the defendants say that you, Bayer have

10   not made all reasonable effort to obtain the witnesses'

11   trial testimony by other means.  Could you just respond to

12   that contention?

13             MR. McBRIDE:  Yes.  So that is not true, and

14   unreasonable.  I mean the consulate, which they mentioned

15   the consulate initially.  The consulate has been closed --

16   depositions for at least back through the time when this

17   most recent spike occurred, and perhaps even longer.  They

18   shut down the routine services in March.  So that option has

19   not existed.

20             And the Article 17 is exactly our point.  It is

21   a different kind of letter sent through the Hague to the

22   individual courts in question basically seeking permission

23   to do voluntary testimony with an appointed commissioner.

24   Again, it requires the timeline of process that letters of

25   request require.  It's not as long as the formal requests

1    such as was done for Dr. Feurer, but it requires time, and

2    it also requires the permission of the Court along with

3    whatever conditions that can be set, including conditions of

4    being in the courtroom with the German judge in addition to

5    the commissioner.

6                    THE COURT:  Okay.

7                    MR. McBRIDE:  It's a logistical issue.

8                    I guess what I would say in a nutshell, Your

9    Honor, all of these issues would have required us to have

10   predicted in advance where we would be now and that our

11   dominant solution which has worked in the past would be

12   unavailable.

13                   THE COURT:  All right.  We'll come back to you,

14   but let me hear from defendants at this point.

15                   MS. BLAIS:  Good morning, Your Honor.  It's

16   Elaine Blais from Goodwin Procter.  How are you?

17                   THE COURT:  I'm fine.  Thank you.  Good morning.

18                   MS. BLAIS:  Good.  So a couple of responses.

19                   I guess on bifurcation, we would say we disagree

20   that the question of whether the poster prior art is limited

21   to expert testimony.  To the contrary, one of the questions

22   is whether there would be a reasonable expectation of

23   confidentiality with regard to the presentation of that

24   poster at the ACS conference.

25                   And we took testimony from each of the inventors

1    relevant to that question.  So we would say that, yes, the

2    expert comments on that and they're important, but what the

3    inventors have admitted is also important, so we don't avoid

4    inventor testimony by bifurcation.

5              Similarly, one of the inventors mailed that

6    poster to a competitor following that conference.  And that

7    testimony we think is also relevant to the question of prior

8    art.  So we don't think that bifurcation actually achieves

9    what the plaintiffs are proposing.

10             I guess I would similarly say the question you

11   asked about how things will proceed if you determine that the

12   poster is prior art is particularly relevant.  I mean we find

13   ourselves in December of 2020 for this case not only because

14   of the pandemic but also because we had issues a year ago

15   about Bayer not providing us with appropriate discovery, and

16   we were forced to move the trial from February because of

17   that.  That is why we're up against this April 30-month stay

18   expiration.

19             Now, we have no reason to believe that we will

20   not have tentative approval by that date.  I'm sensitive

21   about the confidentiality of the current status on a call.

22   I don't know if anybody else in the public has joined,

23   though I did hear a beep and there was a number on the

24   docket.

25             THE COURT:  Let me just -- yes, let me just

1    say --

2              MS. BLAIS:  Yes.

3              THE COURT:  -- this is a public call.  I don't

4    know when we're not monitoring who is on it, so assume that

5    the public is on the call.

6              Go ahead.

7              MS. BLAIS:  Okay.  So with that in mind, I would

8    say we have no reason to believe that we won't have approval

9    by then.  I think I can comfortably say that.  And so that

10   30-month stay is a real gatekeeper.

11             The other thing I think is interesting is, you

12   know, we sort of got this consulate in the statement that

13   Bayer is making about its requirement to disclose to us what

14   it intends to prove at trial.  And in that context, they say

15   that MSN has taken deposition of each of the witnesses and

16   should therefore be adequately prepared for their live

17   testimony, which to me says they're not going to say

18   anything live that they haven't already said at deposition,

19   which kind of underscores our point that these depositions

20   were taken in a period when Bayer was on notice that we were

21   exploring inequitable conduct on the basis of this poster,

22   and they had the opportunity and, in fact, did ask questions

23   of the witnesses themselves.  So we don't really think that

24   there is a need for the live testimony.

25             And I guess similarly I would say, you know, you

1    asked the question have you made all reasonable efforts?

2    And while they said that our statement that they haven't is

3    not true and unreasonable, I don't think what they went on

4    to say actually establishes that they have taken all

5    reasonable efforts.

6          We have certainly been hearing from health

7    officials from very early on in this pandemic that we could

8    expect a significant spike in the fall.  That certainly is

9    not a surprise.  It is something we have all been aware of

10   and have made no efforts to use any of the processes

11   available to them or to have the witnesses travel during the

12   summer when things were safer to give a trial deposition.

13   So we do not think they have made all reasonable efforts.

14          I think I have responded to the points, but I'm

15   happy to take any questions that you might have for me.

16          THE COURT:  Well, I guess give me a better sense

17   as to how you believe you would be prejudiced if I did

18   bifurcate.  I suppose one argument would be if you weren't

19   allowed to put in the deposition testimony that you say is

20   relevant to the prior art question, but maybe you would be

21   permitted to put that in, and if you were, then what is left

22   of the prejudice argument to sort of phasing this?

23          MS. BLAIS:  Sure.  I mean one thing is the cost

24   to our client, which is that the cost of this case has

25   already been driven up quite a lot by the fact that we had

1    to take testimony and extend depositions out beyond the

2    reasonable period that we wouldn't have had if we hadn't had

3    to sort of chase after a witness, take additional 30(b)(6)

4    to try to get that deposition, and, you know, preparing for

5    two trials is more expensive than preparing for one.  Even

6    if it's shorter, it's just the nature of how this happens.

7    So that is a prejudice to our client.

8              And, you know, certainly again there is no

9    guarantee that we will be able to tell you the story that we

10   need to tell you, right?  I mean a trial has, it's not just

11   here is a piece of evidence and here is another piece of

12   evidence, right?  It's the order in which we present the

13   evidence.  And it's, you know, one of the key issues here

14   is that some of the inventors say, oh, we didn't think the

15   poster was prior art and that is why we didn't disclose it.

16             Well, that overlaps with the question of whether

17   it is prior art.  And so, you know, we don't want to have to

18   present the same evidence twice or parse it in a way that

19   doesn't tell you a coherent story.

20             So that is our concern is the coherency of the

21   story, the uncertainty of the timeline, and the cost to our

22   client.

23             THE COURT:  All right.  So then what, your

24   preference is we go forward as scheduled and we treat the

25   inventors as unavailable, and I just do my best with

1  whatever deposition testimony you all have come up with

2  along with those witnesses who are available to testify

3  live?

4  MS. BLAIS:  That is our proposal.  And I guess I

5  would say two other things.

6  One is that there are four inventors that we

7  have accuse accused of inequitable conduct.  They are only

8  proposing that two come live, which means that you are going

9  to have to rely on deposition testimony for at least two of

10  those inventors.

11  Of course, the law is you could conclude that

12  three of the inventors had a good faith basis for what they

13  did and the fourth didn't, and that is still inequitable

14  conduct.  So regardless, there will be at least two

15  inventors from whom you will only have non-live testimony.

16  The other thing is we have no idea based on

17  their statement of contested facts what it is they propose

18  to do live with these witnesses that is different from what

19  is in the deposition.

20  So we're kind of at a loss.  You know, as

21  they say, we should know what this witness is going to say

22  because we took the depositions.  But they haven't told us

23  sort of what is the need to have these witnesses come and

24  say something to you live?  Is it different?  Are they going

25  to contradict themselves?  Are they going to say something

1   new?  We have no idea.

2              THE COURT:  What about -- well, first off, on

3   the prior art question and the status of the ACS poster.  Do

4   you agree that that is a dispositive issue if I rule against

5   you on that?  Is this case over?

6              MS. BLAIS:  I believe -- well, I believe that is

7   the case.  If the poster is not prior art, I believe that

8   that is right, that it is dispositive.

9              THE COURT:  Now, what about this as a

10  possibility?  If we went forward the way you request, but

11  then there is a possibility once I am much more familiar

12  with the evidence and the arguments you are making, I might

13  feel that I really do need to see the testimony live of one

14  or two of the inventors that you have accused of inequitable

15  conduct?  And so then we may be very late 2020, and you have

16  all presented your case; and I say look, I just, I now

17  realize I can't decide this without seeing those witnesses

18  live; and then we've got to figure out what to do at that

19  point.  Do you recognize that as a risk with your approach?

20  And what would you say about that?

21             MS. BLAIS:  So I certainly I think that is your

22  prerogative.  I think that we took thorough depositions.

23  The witnesses are on videotape.  They were subject to

24  redirect.  But I can't eliminate the possibility that you

25  might want to hear from one or both of the two inventors who

1    are willing to testify live.

2                    Again, there will be no opportunity to have live

3    testimony from the other two, based on our understanding of

4    what the plaintiffs are proposing.  But I still think it

5    is more efficient to go forward, put our case in in its

6    entirety.  And if you conclude at that point that you would

7    like to hear from those witnesses, that is certainly your

8    prerogative, but I think it is less likely to interfere with

9    the 30-month stay if we proceed with what we have now, and

10   be open to the possibility that you want something else than

11   it is to do this piecemeal in the way that the plaintiffs

12   are proposing.

13                    THE COURT:  All right.  A couple more

14   questions, but feel free to tell me you don't feel

15   comfortable answering them, keeping in mind we're in a

16   public proceeding.

17                    Is your client willing to disclose more in a

18   confidential setting to the Court and to the plaintiffs

19   about the status of your application?

20                    MS. BLAIS:  I believe that in a confidential

21   setting, that is likely, but I need to confer with the

22   client on that question.

23                    THE COURT:  Okay.  And then, again, feel free

24   to totally punt on this, but I'm just trying to consider

25   all possibilities.  Certainly we all would like to avoid

1    preliminary injunction practice if we can avoid it, and we

2    particularly would like to avoid it if we've in the meantime

3    had a trial, but should I even be thinking about the

4    possibility of this trial just maybe can't be done over the

5    foreseeable feature, you know, until things in Europe and

6    hopefully here improve, and so, you know, continue trial

7    potentially indefinitely; and if somebody wants to file a

8    preliminary injunction motion, we'll deal with it when it

9    comes in.

10            Is that even the kind of thought that I should

11    be entertaining if you can answer that?

12            MS. BLAIS:  I think the answer I'm comfortable

13    giving is that but if the trial does not happen and you are

14    not able to issue a decision prior to the 30-month stay, I

15    would say that it's really up to the plaintiffs whether

16    they're going to file a motion for preliminary injunction,

17    but I think it would be possible that we could see ourselves

18    in that situation.

19            THE COURT:  Okay.  Thank you.  I will come back

20    to you at least one more time, but let me turn it back fo

21    the plaintiffs and Mr. McBride to respond to what you have

22    heard, please.

23            MR. McBRIDE:  Certainly, Your Honor.  I guess

24    that, first and foremost, I don't think I have to tell the

25    Court why we would want our accused -- so they can look the

```
 1        Court in the eye, albeit remotely, and say that they did

 2        not intentionally defraud the Patent Office ACS poster 205.

 3        And I think we -- the Court can understand why we would

 4        want that to happen with a live witness.  So I don't need

 5        to belabor why having witnesses live when their credibility,

 6        their honor is being attacked is something we would want.

 7                     THE COURT:  All right.  Let me interrupt you

 8        on that.  Because certainly I understand, I understand that,

 9        but I think what we're wondering is, is that it or do they

10        have some new story to tell?  Do they have some materially

11        new information that they want me to hear as I determine,

12        if I have, to their intent or is it more just they want a

13        chance to have their credibility assessed in the best

14        possible way, which would be live testimony?

15                     MR. McBRIDE:  It's the ability to have their

16        credibility tested through live testimony, Your Honor.  I

17        mean the ability to tell a story won't deviate from the

18        story that was told at their deposition.  They're not

19        changing their story, but as you know, I mean the deposition

20        is crafted piecemeal in order to obtain the information

21        that the, that the taking attorney wants.  It is not an

22        opportunity for the witness to tell a coherent story that

23        makes sense.  And so the limitations of the information and

24        the nature of -- in the process.

25                     That is how I would answer that, Your Honor.
```

```
 1                    THE COURT:  Okay.  Go ahead.  Thank you.
 2                    MR. McBRIDE:  With respect -- and I apologize,
 3       Your Honor.  I'm being told that -- the technological
 4       limitations.
 5                    THE COURT:  I'm not sure what you are being told
 6       because you are --
 7                    MR. McBRIDE:  Okay.
 8                    THE COURT:  -- every ten seconds or so, we lose
 9       about a half of a second on what you are saying.
10                    MR. McBRIDE:  I apologize.  And I'll -- I don't
11       know what to do about that unfortunately given my technology
12       here in my house, but the other point being that, this idea
13       that there is some element of inventor testimony necessary
14       for the determination of the prior art, again, I think, Your
15       Honor, first of all, I don't think that is the standard.  It
16       is not some -- of the inventors under Clockenstein, but,
17       more importantly, that is an extremely narrow piece of
18       testimony not relating to the intent.  And I think Your
19       Honor has noted that if they need some small amount of the
20       depositions for that in the first phase of the trial, that
21       is entirely consistent with the plan we're putting forward.
22                    And then, finally, with respect to all
23       reasonable efforts, I mean I think counsel -- makes my
24       point, which is they were expecting us to have predicted the
25       nature and severity of the course of the virus six months in
```

1    advance.  And that is, that is, in and of itself, is not

2    reasonable.

3                THE COURT:  All right.  So I think you said if I

4    were to bifurcate and the defendants thought some limited

5    amount of the inventor deposition testimony was relevant

6    because they wanted me to hear things about what the

7    inventors have said about their intent, plaintiff would not

8    object to that in the context of step 1 of a bifurcated

9    trial.  Is that right?

10                MR. McBRIDE:  Correct, Your Honor.  I mean if

11   they needed to designate some small amount of test -- is

12   relevant to the prior art standard, then yes, they can

13   certainly do that.  That's not the, that's not the issue for

14   which the inventors are primarily needed to testify live.

15   It's on the issue of intent.

16                THE COURT:  All right.  And then if I do go

17   forward in a bifurcated way, one thing I am thinking about

18   is we would, we would set a date for going forward with the

19   second phase unless I have ruled in your favor prior to

20   then, and it would have to be a date presumably January,

21   February, March, something like that, so you could get me

22   some briefing and I could make a decision on step 2 before

23   the 30-month stay in April.

24                So what I'm thinking is if I went in that

25   direction, I set a date certain and you would basically have

1    to agree that if the witnesses are unavailable as of that

2    date, because of presumably the COVID situation, then we'll

3    just go forward as if they are unavailable, we'll declare

4    them unavailable, and you will be stuck with the deposition

5    testimony.

6            Do you object to an approach like that?

7            MR. McBRIDE:  No, Your Honor.  Based on what you

8    have ordered previously, we thought that was the situation

9    we were in now and we were prepared to go forward as the

10   Court required.  So I, we would agree to that.

11           THE COURT:  Do you have in mind what that date

12   should be?

13           MR. McBRIDE:  I do not, Your Honor.  I admit I

14   thought that that should -- I think what I would do is ask

15   the Court, you know, what would it -- what does it -- in

16   terms of timing post-trial for briefing, which I assume

17   would be a fairly narrow briefing, and then for decision,

18   and we will work around that.

19           And I know Your Honor's docket is extremely full

20   next year, so I think that is probably the primary limiting

21   factor for us.

22           MS. BLAIS:  Your Honor, may I interject?  Sorry.

23   May I interject with one suggestion?

24           THE COURT:  Sure.

25           MS. BLAIS:  I mean we're talking about two of

1     the four inventors here.  So if we bifurcate, why couldn't

2     we put on the case other than those two inventors rather

3     than bifurcating along the lines of prior art status and

4     intent?  We could get as much done as possible early and

5     just hold off on those two inventors until the later date,

6     and then we would either play their deposition testimony or

7     do them live, but delaying the rest of it, there is really

8     no reason for it.

9              THE COURT:  Mr. McBride.

10             MR. McBRIDE:  I guess in that -- taking a fairly

11     orderly division of the trial, and we have not -- been to

12     subsections that I don't think are necessary and I don't

13     think would be helpful, I mean we have an issue on prior art

14     which we can get in front of the Court in a limited fashion

15     and then later, you know, those same two witnesses can be

16     bundled together with the live testimony of the other

17     witnesses and go forward on that issue at that time.  I

18     think it is an unnecessary complication that doesn't get us

19     anything.

20             THE COURT:  Well, do you disagree with the legal

21     point, Mr. McBride, that Ms. Blais made?  If they prevail

22     with respect to any one of these four inventors, then your

23     patent is unenforceable; right?  Do you agree with that?

24             MR. McBRIDE:  That is true legally, Your Honor.

25             THE COURT:  So then I guess I still -- look, I

1    mean I should say it even though we all know it.  We're

2    all, we're talking about second best, third best, fourth

3    best options; right?  None of us want to be in the situation

4    we're in.  It's I just have to decide which are the fair

5    sacrifices to make under the totality of circumstances.

6            So I agree you're right, of course, Mr. McBride,

7    that some ways of cutting this up are more coherent and

8    easier to manage than others, but we're not able to proceed

9    in the ideal way that we all want to.

10           So I guess why shouldn't my principle here be

11   let's get as much of this done as we can.  It would have the

12   possibility that you could win this case at step 1 because

13   we'll present the full step 1 case, but it also presents

14   the possibility that the defendant could win at step 2

15   even without having presented its case for two of the four

16   accused inventors.  Why isn't that the right way forward?

17           First to you, Mr. McBride.

18           MR. McBRIDE:  You make some extremely valid

19   points, Your Honor.  And I can't dispute that we are

20   definitely in a third and fourth best world right now.  And

21   if that it's what Your Honor wanted to do, we would -- we

22   can certainly go forward on that.

23           THE COURT:  All right.  Ms. Blais, what do you

24   want to add?

25           MS. BLAIS:  I don't know if I have anything else

1    to add at this point, Your Honor.  I guess I would just

2    underscore that while nobody can predict what would happen

3    this fall, it is certainly much more likely than not that

4    we're going to see another spike and just underscore while

5    the pandemic has caused much of this delay, the beginning

6    delay started with the situation that we dealt with about

7    this time last year with the unfairness of the discovery

8    process.

9              So I would really like to go forward with as

10   much of the case as we possibly can, understanding that

11   there may be some reason to take additional testimony later.

12   But I think it should go forward with as much as we can.

13             THE COURT:  All right.  Mr. McBride, anything

14   else you want to say?

15             MR. McBRIDE:  No, Your Honor.

16             THE COURT:  All right.  Well, the discussions

17   has been very helpful, and I do think that the way we should

18   go forward is as I have just sort of stumbled on to and

19   outlined.

20             So to try to be clear, I want to go forward in

21   December, remote video trial.  None of that is changing.

22   And I want to do as much as we can within the reasonable

23   time that I'm going to give you.  And right now, I'm not

24   reevaluating that amount of time, but we're going to have a

25   chance to talk further at the pretrial conference next week.

1           And so what does that mean?  I think in light

2    of this discussion, what that means is both sides will

3    certainly be presenting their full case on the prior art

4    questions, step 1.  And both sides will present as much as

5    they can of their step 2, the intent, let's say we'll call

6    for the moment, step 2 analysis.

7           But I recognize, and unless something changes

8    materially before December 2nd, I recognize that two of the

9    inventor witnesses who are accused of inequitable conduct

10   are not available given that they are evidently in Germany,

11   not able to legally provide the testimony that I would want

12   to hear from Germany, and are unable due to the pandemic to

13   travel to another location where they could legally provide

14   that testimony.

15          I am not persuaded by defendants' argument

16   that I could find that plaintiffs have not made reasonable

17   efforts to make those witnesses available.  The argument

18   that plaintiffs should have predicted we would be where we

19   are with respect to the pandemic and therefore should have

20   taken proactive steps to I guess take another, a trial-type

21   deposition to record the witnesses' testimony, I'm not

22   persuaded that the plaintiff had failed to use reasonable

23   efforts by failing to take those steps.

24          In deciding how to go forward, I have considered

25   the defendants' argument about costs.  It is regrettable

1    that we may end up, you know, with a second step to this

2    trial, depending on what my decisions are after the first

3    step.  And that would, I understand, drive up costs on both

4    sides, but particularly defendants are the ones that have

5    raised that concern.  And I recognize that we're here in

6    part due to discovery issues that arose earlier in the case.

7               But I do imagine at least some amount of costs

8    are being reduced given that we are not making you all

9    travel.  And to the extent that costs are increased even on

10   net, that is regrettable, but it is a consequence of where

11   we are.  And by that, I mean largely due to circumstances

12   beyond all of our control.  Namely, the pandemic.

13              I recognize that to some extent, by carving off

14   these two live inventor witnesses from the main trial, there

15   may be some minimal prejudice to one or both sides about

16   the coherence of the story you are going to tell about the

17   thoroughness of the cross-examination, things you may be

18   trying to reserve just for those witnesses.  Those, too,

19   are all regrettable, but are relatively minor prejudices in

20   light of the totality of the circumstances that we're all

21   struggling with.

22              In terms of going forward, well, obviously we

23   can talk more on Wednesday.  I believe that is the date of

24   the pretrial conference.  We'll talk more at the pretrial

25   conference.  We'll be spending plenty of time together by

1    video during the trial, and we'll want to talk about what

2    type of briefing will be provided after the December part of

3    the trial, how realistic is it that I will get a decision,

4    and when will I get you a decision and figure out when we

5    would move forward to the last part of the trial, if we need

6    it, and whether we'll set a date certain by which we'll all

7    agree that the other inventor witnesses remain unavailable.

8            These are details that I do want you all to

9    start thinking about, but I'm not prepared to lock in

10   anything about those dates and deadlines.

11           What I will order is the following:

12           In light of what I have said today and any

13   further discussions that the parties have themselves, I do

14   want another joint status report on Monday principally to

15   tell me if anything about the pretrial order that you have

16   already submitted is now moot or should be modified in some

17   respect, so when I prepare for the pretrial conference, I

18   don't want to waste my time on things that have now been

19   dealt with and there is something more I need to know.  Put

20   all that in the letter on Monday.

21           And I do want the parties also to talk about

22   whether or not the plaintiffs want to know on a confidential

23   basis more about the status of the defendants' FDA

24   application and, if so, whether the defendants are willing

25   to provide that information on a confidential basis.  I'm

1    not ordering anything in that regard other than that I do

2    want you all to have that conversation.

3                I think that was all I needed to say, but let me

4    see if you have any questions or further things we should

5    talk about today.

6                Mr. McBride.

7                MS. BLAIS:   Sure.

8                MR. McBRIDE:   I have a quick question, Your

9    Honor, for clarification, and then there are some additional

10   issues.

11               Just making clear what we're going forward with

12   is carving off the two live inventors, assuming they remain

13   -- and we would not -- we would be reserving testimony from

14   them with potential live testimony or deposition testimony

15   later and not presenting their deposition testimony on

16   issues of intent at least right now in this current phase.

17               THE COURT:   With the limited exceptions that we

18   had talked about before.

19               MR. McBRIDE:   Okay.

20               THE COURT:   So if either side, but defendants

21   already told us, thinks that some limited portion of even

22   those inventors' testimony is relevant to the step 1

23   question about prior art, then you will be permitted to, and

24   you should present that.  But the rest of what you said is

25   correct.

```
 1                    MR. McBRIDE:  Okay.

 2                    THE COURT:  Other questions about this before we

 3       turn to any other issues, Mr. McBride?

 4                    MR. McBRIDE:  Not from me.  No, Your Honor.

 5                    THE COURT:  Okay.  Yes, Ms. Blais?

 6                    MS. BLAIS:  Yes.  So, Your Honor, we did have

 7       the same question of what we're supposed to do with the

 8       deposition testimony of these two witnesses.  And I think

 9       that is a little complicated because some of what they say

10       is important for the context of what some of the other

11       witnesses say.  So we would like to be able to present

12       their deposition testimony on certain issues, and certainly

13       one of these inventors was a 30(b)(6) designee on topics,

14       and so we should be able to play that testimony regardless

15       of whether he is considered live.

16                    THE COURT:  Look, I think you will be able to

17       work this out, but I will say a few things.

18                    If your concern at all is I may have to hear the

19       same deposition testimony twice because we may be back in, I

20       don't know, February, March, focused on these two inventors

21       and unfortunately we may not be able to get them live, don't

22       worry about that.  I'm not going to hold that against

23       anybody.  That is a risk with our proceeding that I may have

24       to listen to portions of the same depositions, same portion

25       more than once.  That is a risk I'm willing to take under
```

1    the circumstances.

2              I have a procedure for you to narrow your

3    deposition designations and for you to submit short letter

4    briefs if you have disputes as we get closer to trial.

5              And also I'm going to have a time limit.  Right

6    now, it's not as much time as defendants want, and I don't

7    know that I'm going to get to what defendants want, and so

8    I'm confident that through the meeting and conferring and

9    narrowing your case and any rulings I have to make on

10   objections to deposition testimony, that either you all

11   will be able to work it out or I will.

12             So we're not going to play the full depositions

13   because we may yet hear these witnesses live, but I'm not

14   limiting you to just a couple questions and answers, and

15   we'll have to work it out where we are.

16             MS. BLAIS:  Okay.

17             THE COURT:  Okay.

18             MS. BLAIS:  Yes.

19             THE COURT:  Any other questions about what we

20   have talked about so far, Ms. Blais?

21             MS. BLAIS:  No, that is very helpful.  Thank

22   you, Your Honor.

23             THE COURT:  Okay.  Mr. McBride, what else do you

24   want to talk about?

25             MR. McBRIDE:  There was one additional as to the

1    length of the brief additional deposition for Dr. MacMillan

2    on his supplemental report.  We had proposed -- three.

3              THE COURT:  You dropped out, but I know that you

4    proposed two hours and they proposed three.

5              MR. McBRIDE:  Three is correct.

6              THE COURT:  That's more than two, right?

7              MR. McBRIDE:  Yes, we would like them to limit

8    it to two hours.

9              THE COURT:  Okay.  Let me ask defendants why is

10   two hours not sufficient?

11             MS. BLAIS:  The answer, Your Honor, is that it

12   may be sufficient, but we haven't seen this report yet, and

13   if we get it today and it is 25 pages, then we may need more

14   than two hours.

15             So we're certainly intending to be reasonable

16   and intending to be efficient, but we just are concerned

17   about what we might receive today and are unable to agree to

18   two hours until we have seen it.

19             THE COURT:  Can you tell us anything, Mr.

20   McBride about the anticipated length of this report?

21             MR. McBRIDE:  Yes, it will be approximately the

22   same length as Dr. Scheidt's supplemental report to which he

23   is responding.  So approximately 30 pages.

24             THE COURT:  Was that 30 you said?

25             MR. McBRIDE:  Yes.  The same as Dr. Scheidt's

1   report was run, and that's what we're responding to.

2              THE COURT:  All right.

3              MR. McBRIDE:  I mean candidly, Your Honor --

4   well, I won't go into it.

5              THE COURT:  Okay.  I'll give defendants up to

6   three hours to take the deposition.  Obviously, don't use

7   all three hours if you don't need it.  I don't know if

8   30 pages of substantive material or not but three hours is

9   still consistent with a short deposition, so that's my

10  ruling on that.

11             Mr. McBride, other issues?

12             MR. McBRIDE:  I think that one issue we needed

13  to alert the Court in terms of the technology, the parties

14  have agreed to use Trialgraphix as the neutral host for the

15  video conferencing technology and I think -- it's going to

16  get in touch with your courtroom to, and get Trialgraphix in

17  touch with your courtroom to get that all set up.  We just

18  wanted to make you aware of that.

19             THE COURT:  Thank you.  Yes, we have worked with

20  them on at least two or three video trials, so I think they

21  know who to reach out to and how to get started on that.

22             Thank you for arranging that.

23             Ms. Blais, issues you wanted to raise?

24             MS. BLAIS:  I don't think so.  The only thing

25  is I wanted to give you a brief update that we did today

```
 1    receive a report from the German court about the pure Hague

 2    proceeding.  It came to us in German so we don't have lots

 3    to say about it yet.  We provided plaintiffs with a copy of

 4    it in case they have not also received it and let them know

 5    that we intend to have a formal translation done as soon as

 6    possible.

 7                    THE COURT:  Okay.  Thank you for the update.

 8                    All right.  Well, if nobody else has anything

 9    further, thank you very much for the helpful discussion.

10    We'll look for your submission on Monday, and we will see

11    you in the video pretrial conference on Wednesday.

12                    I hope you all get to safely enjoy Thanksgiving

13    and the weekend.  And we will be in recess.  Bye-bye.

14                    (The attorneys respond, "Thank you, Your

15    Honor.")

16                    (The telephone conference ends at 11:49 a.m.)

17

18        I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

19

20                          /s/ Brian P. Gaffigan
                             Official Court Reporter
21                            U.S. District Court

22

23

24

25
```